UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-01788-JRS-DLP |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Angela G. ("Ms. G.")[2] applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on January 1, 2014, alleging an onset date of October 1, 2008. [ECF No. 17-2 at 26.] Her application was initially denied on February 19, 2014, [ECF No. 17-4 at 2], and upon reconsideration on April 28, 2014, [ECF No. 17-4 at 11]. On October 13, 2015, Ms. G. applied for supplemental security income ("SSI"), alleging the same onset date, and the two claims were consolidated for further review. [ECF No. 17-2 at 26.] Administrative Law Judge Howard Kauffman (the "ALJ") held a hearing on March 9, 2016. [ECF No. 17-2 at 44-83.] The ALJ issued a decision on April 28, 2016, concluding that Ms. G. was not entitled

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] The Court further notes that Ms. G.'s application was filed under a previous name, which was used throughout the SSA's evaluation of her claims. [ECF No. 1 at 1.]

1

to receive DIB or SSI. [ECF No. 17-2 at 23.] The Appeals Council denied review on March 24, 2017. [ECF No. 17-2 at 2.] On May 30, 2017, Ms. G. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [ECF No. 1.]

## I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton,* 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

2

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. §404.1520(a)(4)(i)-(v),[3] evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One

---

[3] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only. However, the Court will detail any differences relevant to the adjudication of this case as they may arise.

through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. G. was 42 years of age at the time she applied for DIB. [ECF No. 17-5 at 2.] She has completed three years of college and previously worked as a bartender, cook, and certified nursing assistant ("CNA"). [ECF No. 17-6 at 7.][4]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. G. was not disabled. [ECF No. 17-2 at 37.] Specifically, the ALJ found as follows:

- Ms. G. last met the insured status requirements of the Social Security Act through June 30, 2011 (her date last insured or "DLI").[5] [ECF No. 17-2 at 28.]

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] For her DIB claim, Ms. G must prove the onset of disability on or before her DLI to be eligible for benefits. *See* 20 C.F.R. § 404.131. Recognizing that Ms. G filed an application for SSI, the ALJ evaluated the evidence and made relevant findings for the period at issue for that claim, which continued through the date of the decision. [ECF No. 17-2 at 34.]

4

- At Step One, Ms. G. had not engaged in substantial gainful activity[6] since October 1, 2008, the alleged onset date. [ECF No. 17-2 at 28.]

- At Step Two, she had the following severe impairments: "degenerative disc disease of the lumbar spine, and obesity." [ECF No. 17-2 at 28 (internal citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 17-2 at 31.]

- After Step Three but before Step Four, she had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, or walk for 6 hours each per 8-hour workday. She cannot climb ladders, ropes or scaffolds, but can occasionally climb ramps, stairs, balance, and stoop, kneel, crouch or crawl." [ECF No. 17-2 at 32.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Ms. G.'s RFC, she was incapable of performing her past relevant work as a CNA, short order cook, and waitress. [ECF No. 17-2 at 35.]

- At Step Five, relying on VE testimony and considering Ms. G.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision. [ECF No. 17-2 at 36-37.]

## III.
### DISCUSSION

Ms. G. argues that a single issue necessitates remand. Specifically, she contends that the ALJ's failure to discuss or analyze the findings of an MRI taken "nine days before the hearing" requires remand, "[b]ecause 'an ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that

---

[6] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

undermines it' . . . ." [ECF No. 21 at 1-2 (quoting *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014)).] Ms. G asserts that the 2016 MRI "showed substantial deterioration from a prior MRI taken in 2013." [ECF No. 21 at 6.]

The Commissioner argues that the ALJ supported his RFC with substantial evidence and evaluated the medical and nonmedical evidence, including Ms. G's subjective symptoms. [ECF No. 26 at 9-11.] More specifically, the Commissioner asserts that "the ALJ evaluated the clinical exam findings in great detail (Tr. 32-34), and his analysis reflects that he relied on them more than any other objective medical evidence in assessing [Ms. G's] RFC (Tr. 33-34)." [ECF No. 26 at 12.] The Commissioner also argues that the ALJ considered Ms. G.'s statements, activities of daily living, and conservative treatment history in assessing her RFC. [ECF No. 26 at 15.] Furthermore, the Commissioner contends that the ALJ is not required to mention every piece of evidence, the claimant bears the burden of showing that ignored evidence supports disability, and any failure to mention the MRI should be considered harmless error. [ECF No. 26 at 16-17.]

To begin with, the Court finds that the 2016 MRI is not relevant to an evaluation of Ms. G's claim for DIB. As noted above, her DLI was June 30, 2011. Even if the Court were to accept Ms. G's argument that the 2016 MRI established significant deterioration in comparison to a prior 2013 study, any progression would not be relevant to her functioning before her DLI. Accordingly, the Court affirms the ALJ's denial of Ms. G's DIB claim.

Turning to Ms. G.'s SSI claim, the Court finds that even though the ALJ neglected to mention the 2016 MRI, the omission was not fatal to the ALJ's specific analysis. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore*, 743 F.3d at 1123 (citing *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009)) (additional citations omitted). "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (citing *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994)).

This is not a case where the ALJ neglected to address an entire line of evidence. For example, in *Herron*, the ALJ completely disregarded the evidence following an Appeals Council remand that related to the claimant's hand impairment in favor of evaluating the claimant's other impairments. *Herron,* 19 F.3d at 333. Here, the ALJ found Ms. G.'s degenerative disc disease of her lumbar spine to constitute a severe impairment and the decision focused almost exclusively on the evidence of her back pain.

More specific to Ms. G's argument, the Court agrees with the Commissioner that the diagnostic imaging was not the predominant evidence that the ALJ relied upon to deny Ms. G's claim. The ALJ reviewed an MRI of the lumbar spine taken

September 30, 2013, which he acknowledged indicated mild spondylitic changes and "was reportedly significant for [an] L5-S1 desiccated protrusion and mild proximal neural foramen narrowing with mild facet arthropathy." [ECF No. 17-2 at 33 (internal citations omitted) (citing ECF No. 17-8 at 54).] The ALJ concluded that Ms. G.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record for the reasons explained in this decision." [ECF No. 17-2 at 32.] The ALJ did not dispute the presence of an impairment that could cause Ms. G's back pain, nor did the ALJ explain that indications of "mild" degenerative disease led him to believe that Ms. G was overstating the severity of her condition.

The MRI of Ms. G.'s lumbar spine taken March 1, 2016, indicated "degenerative changes most prominent at L5-S1 with [a] diffuse disc bulge, *moderate* bilateral neural foraminal stenosis, *moderate* facet degenerative disease, mild retrolisthesis of L5 onto S1." [ECF No. 17-11 at 17 (emphasis added).] While there is some indication that severity had increased from mild to moderate, the imaging did not establish any new, significant diagnosis that was not addressed by the ALJ. Accordingly, this is not a case where the neglected MRI "contained significant, new, and potentially decisive findings . . . ." See *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (diagnostic report established the need for a total hip replacement); *contrasted also with Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (new MRI directly contrasted a

8

consulting physician's rationale that there was no new medical evidence and further established a diagnosis of Chiari I malformation, which provided objective support for disregarded allegations of severe headaches). The Court does not conclude based on the explicit rationale of the ALJ that citing a mild study supported the ALJ's conclusions, while the presence of a moderate study would have necessarily conflicted with the ALJ's conclusions.

The Court believes that the absence of an apparent conflict between the ALJ's conclusions and the omitted evidence distinguishes the authority that Ms. G. relies upon. In *Moore*, the ALJ "presented only a skewed version of the evidence" by focusing on statements in the record that suggested the claimant was drug seeking, while neglecting to confront treating source statements that disputed narcotic dependence and emphasized the legitimate need for symptom relief. *Moore*, 743 F.3d at 1123. In *Myles*, the ALJ accepted portions of a treating physician's report that were consistent with the claimant not being disabled but failed to address other specific conclusions in the same report that opined marked limitations that would interrupt the completion of a workday. *Myles*, 582 F.3d at 678. In *Indoranto*, the ALJ completely neglected to discuss evidence of headaches and blurred vision, including the alleged symptoms, a possibly supportive diagnosis of Arnold-Chiari malformation, and a specialist opinion linking the symptoms and diagnosis. *Indoranto*, 374 F.3d at 473-74.

Once the ALJ had credited the presence of a severe impairment that could cause Ms. G.'s back pain, the diagnosis itself dropped out of the analysis and the relevant consideration became the functional effect of the impairment. "Conditions

must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment. A person can be depressed, anxious, and obese yet still perform full-time work." *Gentle v. Barnhart,* 430 F.3d 865, 868 (7th Cir. 2005); *see Schmidt v. Barnhart,* 395 F.3d 737, 745-46 (7th Cir. 2005) (just because a claimant is diagnosed with an impairment does not mean the impairment imposed specific restrictions on her ability to work). Ms. G. had the burden of proving not just the existence of a condition, but to provide evidence that the impairment supported specific limitations effecting her capacity to work. *Schmidt,* 395 F.3d at 745-46; *see* 20 C.F.R. § 404.1512(a). The Court finds substantial support for the ALJ's conclusion that Ms. G. had not proven the functional effect of her impairment, which is not undermined by the specific findings of the 2016 MRI.

The ALJ detailed Ms. G.'s subjective complaints, including statements she made to her provider on January 27, 2016, "that she had a history of chronic low back pain 'forever' possibly years," with "no radiation to the bilateral lower extremities." [ECF No. 17-2 at 33.] However, the ALJ explained that in "reaching the conclusion that, the claimant can perform work activity; the undersigned has also considered the claimant's testimony, reports and allegations but does not find them entirely consistent with the evidence of record." [ECF No. 17-2 at 34.] The explanation that follows is not a recitation of the objective diagnostic imaging and the indicated severity, i.e. mild. Rather, the ALJ supported his conclusion with evidence that Ms. G. (1) declined further recommended physical therapy, (2) told her doctor that she did not

currently need prescription pain medication, (3) did not show any significant functional limitations demonstrated in clinical examinations (only noting decreased range of motion), and (4) was capable of activities of daily living, like doing her own shopping and taking care of her children. [ECF No. 17-2 at 34-35.] An ALJ is permitted to consider "routine and conservative" treatment in assessing the severity of a claimant's subjective symptoms. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence." Social Security Ruling ("SSR") 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *5. Furthermore, the ALJ is instructed to consider a claimant's daily activities, the type of medication she used, and the other treatment she received. *Id.* at *7-8.

Ms. G. does not argue that the ALJ erred in consideration of any of the evidence that the ALJ specifically cited as supporting both his assessment of her subjective symptoms and the functional effect of her back impairment. Rather, she contends that the 2016 MRI supported her subjected symptoms and conflicted with the ALJ's conclusions. The Court does not agree for the reasons explained above. Moreover, in *Diaz*, the Seventh Circuit held that an ALJ's failure to articulate the reasons for rejecting a medical opinion could be saved by consistent, specific findings that adversely analyzed the claimant's RFC claims and subjective complaints of pain. *Diaz,* 55 F.3d at 307-08.

Having not found error established by the precedent analyzed in this decision, the Court need not consider harmless error to resolve the appeal. However, recognizing the Commissioner's argument, the Court finds in the alternative that if the failure to analyze the 2016 MRI is itself error, any such error is harmless. The Seventh Circuit has described the harmless error doctrine:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir.2010). That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be. We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation. We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

*McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The Court can say with great confidence based on the analysis provided in the decision that the ALJ would not award benefits on remand, given that objective clinical evidence and other evidence of record does not establish significant functional limitations or fully support the severity of Ms. G.'s pain allegations.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid

for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Ms. G. to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 3/6/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Eric C. Bohnet
ATTORNEY AT LAW
ebohnet@gmail.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov